**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01672-KAS

CHIQUITA JOYNER,
HELEN DIXON, and
TAJAHNE HOBLEY, on behalf of themselves and those similarly situated,

      Plaintiffs,

 v.

FRONTIER AIRLINES, INC.,
SIMPLICITY GROUND SERVICES, LLC, d/b/a Menzies Aviation, and
AIRCRAFT SERVICE INTERNATIONAL, INC., d/b/a Menzies Aviation,

      Defendants.

---

**FIRST AMENDED INDIVIDUAL AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

---

Plaintiffs, Chiquita Joyner ("Joyner"), Helen Dixon ("Dixon"), and Tajahne Hobley ("Hobley"), (collectively, "Plaintiffs"), by and through their attorneys, HKM Employment Attorneys LLP, on behalf of themselves individually and all others similarly situated, for their First Amended Individual and Class Action Complaint and Jury Demand against Frontier Airlines, Inc. ("Frontier"), Simplicity Ground Services LLC, d/b/a Menzies Aviation ("SGS"), and Aircraft Service International, Inc. ("ASI") (collectively, "Employers" or "Defendants"), state as follows:

**<u>NATURE OF THE CASE</u>**

1.     Ms. Joyner worked for the Employers in Colorado from approximately July 25, 2022 to August 24, 2023 as a ticket counter Customer Service Agent. Ms. Dixon has worked for the Employers in Colorado from approximately October 10, 2022 to the present as a ticket

1

counter Customer Service Agent.  Ms. Hobley worked for the Employers in Colorado from approximately July 25, 2022 to December 31, 2023 as a gate Customer Service Agent.  Ms. Joyner, Ms. Dixon, and Ms. Hobley are each one of dozens and dozens of ticketing and gate Customer Service Agents (collectively, "CSAs") who worked for Defendants in Colorado between May 14, 2018 to the present (the "Relevant Period") as hourly, non-exempt employees.

2.     The Employers violated the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA"), the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.* ("CMWA"), the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2018-2020), and the applicable Colorado Overtime and Minimum Pay Standards ("COMPS") Orders, 7 C.C.R. 1103-1 (2020-2024) (collectively "Colorado Wage and Hour Law") by:

a.     Failing to pay CSAs regular rate and overtime compensation at a rate of one and one-half times their regular rates of pay for the hours they worked over 40 per week, 12 per day, and/or 12 per shift;

b.     Failing to provide rest periods to CSAs for every four hours, or major fractions of four hours, that CSAs worked or, in the alternative, to pay the CSAs wages owed for the rest periods that were not provided to them;

c.     Failing to provide meal periods to CSAs for every shift in excess of five hours that CSAs worked or, in the alternative, to pay the CSAs compensation for the meal periods that were not provided to them; and

d.     Making improper deductions from CSAs' wages for meal breaks that were not provided and commissions CSAs earned.

3.     At all times relevant to this Complaint, the Employers knew – or through the

exercise of reasonable diligence should have known – that their actions violated Colorado Wage and Hour Law. As such, the Employers' violations of Colorado Wage and Hour Law were willful. *See* C.R.S. §§ 8-4-109(3)(b)(II) (enhanced penalties for willful violations); 8-4-122 (three-year statute of limitations for willful violations of CWA); *see also Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute").

4.      Plaintiffs therefore bring this action on behalf of themselves and all other similarly situated current and former employees, pursuant to Colorado Wage and Hour law for: (1) regular wages for work performed for which they received no wages; (2) overtime wages for work performed for which they did not receive overtime pay; (3) compensation for Defendants' failure to provide legally-mandated rest and meal periods, including reimbursement for rest and meal periods that were not provided as well as for unlawfully-deducted wages; (4) mandatory penalties under C.R.S. § 8-4-109(3)(b)(I); (5) additional statutory penalties under C.R.S. § 8-4-109(3)(b)(II) for Defendants' willful failure to provide payment of all current and former employees' unpaid wages and compensation within 14 days of service of this Complaint; (6) Plaintiffs' costs; and (6) Plaintiffs' reasonable attorneys' fees.

## PARTIES

5.      Plaintiffs incorporate by reference all the allegations contained in the above paragraphs as though set forth separately herein.

6.      Plaintiffs are, and were at all times relevant, residents of the State of Colorado.

3

7.      At all times relevant to this Complaint, Plaintiffs were "employees" of Defendants who were subject to the protections of the CWA.  *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-7, Rule 1.5(A).  During each of their respective terms of employment with Defendants, Plaintiffs were each hourly, non-exempt Colorado employees who worked for Defendants during the Relevant Period.

8.      At all times relevant to this Complaint, Defendant Frontier Airlines, Inc. ("Frontier") was a Colorado corporation with its principal office street address at 4545 Airport Way, Denver, Colorado 80239. Frontier provides air travel services to approximately 120 locations in the United States, Caribbean, Mexico, and Central America.

9.      At all times relevant to this Complaint, Defendant Simplicity Ground Services, LLC, d/b/a Menzies Aviation ("SGS"), was a Delaware limited liability company with a principal office street address at 3500 William D Tate Avenue, Suite 200, Grapevine, Texas 76051.

10.      At all times relevant to this Complaint, Defendant Aircraft Service International, Inc. ("ASI") was a Delaware corporation with its principal office street address at 3500 William D Tate Ave, Suite 200, Grapevine, Texas 76051.

11.      At all times relevant to this Complaint, Defendants were "employer[s]" covered by the CWA. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-7, Rule 1.6(A).

12.      Defendants SGS and ASI provide aviation services to airlines by providing ground, fuel, and air cargo support services to airlines, including passenger services such as ticketing, check-in, and boarding.  Frontier is one of the airlines for which Menzies provides these services.

13.     Frontier, along with SGS and ASI, had the authority and exerted operational control over the terms and conditions of employment of Plaintiffs and the similarly situated employees they seek to represent.  For example, Frontier, along with SGS and ASI, had the authority to direct and supervise the work of employees, including Plaintiffs and the individuals they seek to represent in this case. Frontier, along with SGS and ASI, also had the authority to make and enforce decisions regarding the wage and hour policies and practices at issue in this case, including Defendants' failure to provide meal and rest breaks and their illegal policy of automatically deduct 30 minutes from employees' paychecks regardless of whether a meal break was provided at any time during an employees' shift, which deprived Plaintiffs and other similarly situated employees of payment for time worked, compensation for break entitlements Defendants failed to provide, and overtime wages.

14.     Frontier, SGS, and ASI, were further each joint employers for purposes of Colorado law because of the interrelatedness of their operations and the significant control each exercised over the terms and conditions of employment of Plaintiffs and the class members they seek to represent.

15.     Upon information and belief, at all times relevant, Defendant SGS and Defendant ASI were joint employers of Plaintiffs and similarly situated CSAs because of the interrelatedness of their operations; their common management, including human resources; and the significant exercise of control over the terms and conditions of employment of Plaintiffs and the class members they seek to represent.

16.     Upon information and belief, at all times relevant, Defendant ASI further had the authority to and did exert operational control over the terms and conditions of employment of

SGS CSAs, including the authority to direct and supervise the work of employees, such as Plaintiffs and the individuals they seek to represent in this case, and the authority to make decisions regarding wage and hour classifications and break entitlements earned from actual hours worked by Plaintiffs and putative class members.

17.     Upon information and belief, at all times relevant to this Complaint, Defendant ASI was an "employer" as defined by Colorado Wage and Hour Law because ASI: (1) had the power to hire and fire CSAs; (2) supervised and controlled CSAs' work; and (3) maintained employment records. *See* C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act,' 29 U.S.C. sec. 203(d)"); 29 U.S.C. § 203(d) ("'Employer' means any person acting directly or indirectly in the interest of an employer in relation to an employee"). Upon information and belief, at all times relevant to this Complaint, Defendant ASI had influence over the wages that were to be paid to CSAs, and the break entitlements they would receive, and ASI exercised significant control over the operations of SGS and its employees.

18.     Upon information and belief, at all times relevant to this Complaint, Defendant Frontier was also an "employer" as defined by Colorado Wage and Hour Law because Frontier: (1) had the power to discipline, hire and fire CSAs; (2) supervised and controlled CSAs' work; and (3) maintained employment records. *See* C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act,' 29 U.S.C. sec. 203(d)"); 29 U.S.C. § 203(d) ("'Employer' means any person acting directly or indirectly in the interest of an employer in relation to an employee").

19.     Defendant Frontier exerted substantial control over the terms and conditions of Plaintiffs' employment, including crafting, implementing and enforcement of the payment

policies and practices described herein with respect to Defendants' failure to pay overtime compensation, Defendants' failure to pay employees' earned commission wages, Defendants' 30-minute meal break deductions for breaks employees did not receive, and Defendants' failure to provide earned rest and meal break entitlements for hours worked by Plaintiffs and the similarly situated employees they seek to represent.

20.     Defendant Frontier also exercised significant control over day-to-day operations and evaluation of employee performance for Plaintiffs and all other gate and ticketing CSAs. For example, when a flight was delayed, CSAs would first call Menzies' Operations team, who would require them to provide a detailed explanation and timeline as to the reasons for the delay. After the Menzies Operations team made a determination as to which team was responsible for the delay based on the information they collected (e.g., gate CSAs, ramp employees, baggage handlers), Menzies managers would then provide a detailed report to Frontier, who would make a decision as to what form of discipline to impose upon the employees who were deemed responsible for causing the delay. The CSAs working where the delay was deemed to have occurred would be written up or otherwise disciplined due to Frontier's decision-making and authority, regardless of whether employees were dealing with circumstances beyond their control such as understaffing, oversold flights, or requiring customers to check bags due to Defendants' bag policies.

21.     In addition, on many occasions when Plaintiffs would complain to their managers about Defendants' failure to provide meal and rest breaks, their managers would reply that their directives were coming from Frontier. On several occasions, Plaintiffs' managers responded to Plaintiffs' complaints about not getting their break entitlements or pay for all time worked by

7

explaining their hands were supposedly tied because Frontier was making the wage and hour decisions at issue: i.e., "Frontier is threatening us," "Frontier sent us an email about this," or "We have to keep pushing or we will get in trouble with Frontier."

## JURISDICTION AND VENUE

22.     Plaintiffs incorporate by reference all the allegations contained in the above paragraphs as though set forth separately herein.

23.     This Court has original jurisdiction over this action pursuant to Article 6 § 9(1) of the Colorado Constitution and C.R.S. § 13-1-124(1)(a), (b), and (c).

24.     At all times relevant to this Complaint, each Defendant did substantial business in Colorado.

25.     Venue is proper before this Court pursuant to C.R.C.P. 98 because the unlawful conduct complained of occurred in this District and Defendant Frontier resides in the City and County of Denver at the time of commencement of this action.

## GENERAL ALLEGATIONS

26.     Plaintiffs incorporate by reference all the allegations contained in the above paragraphs as though set forth separately herein.

27.     The Employers employed dozens and dozens of CSAs in Colorado during the Relevant Period.

28.     At all times relevant to this Complaint, the CSAs performed work for the Employers on site, i.e., working from Denver International Airport.

29.     Whether the CSAs worked at the Employers' ticketing counters or boarding gates, the CSAs were actively engaged in transportation of goods across boarders via the channels of interstate commerce.  In other words, the CSAs played a direct and necessary role in the free flow of goods across borders by monitoring and checking passenger bags and cargo permitted on board airplanes bound for interstate transit.  Plaintiffs and the CSAs they seek to represent therefore belong to a class of workers who play a direct and necessary role in the interstate transportation of goods, as well as passengers.

30.     Upon information and belief, each of the Employers' CSAs were subject to the same payment policies described herein with respect to Defendants' failure to pay overtime compensation, Defendants' automatic meal break deductions for meal breaks that were not provided, Defendants' failure to provide meal and rest breaks (or compensation for meal and rest break entitlements employees earned but did not receive), and Defendants' failure to pay all earned commissions, regardless of whether a CSA worked at the Employers' boarding gates or their ticketing counters.

31.     Under Colorado Wage and Hour law, the Employers were and are required to track the number of hours their employees worked; regularly pay their hourly employees for their time worked; and keep accurate records thereof.  *See* C.R.S. § 8-4-101, *et seq.*; 7 CCR 1103-1, Rule 7.1; *see also* C.R.S. §8-6-101, *et seq.*  If an employer fails to do so, an employee is entitled to bring a private cause of action to recover for the time worked without compensation and payment of any paid time off or break time entitlements the employee earned, and the employer failed to provide.  *See Pilmenstein v. Devereux Cleo Wallace*, 492 P.3d 1059, 1064-66 (Colo. App. 2021); *Nieto v. Clark's Market, Inc.*, 488 P.3d 1140, 1145 (Colo. 2021) (vacation pay

entitlement accrued prior to employee's termination was "for work he already performed" and, thus, "earned[ ]" and "capable of being determined[,]" such that the entitlements were subject to the protections of the CWA).

32.    Ms. Joyner worked for Defendants between approximately July 25, 2022 to August 24, 2023 as a ticket counter CSA. While employed by Defendants, Ms. Joyner worked at the ticketing counters at Denver International Airport in Denver, Colorado.

33.    From the beginning of Ms. Joyner's employment until approximately July 1, 2023, she was paid an hourly rate of pay, $17.00, plus a modest commission. From approximately July 1, 2023 to the end of Ms. Joyner's employment, she earned an hourly rate of pay of $17.29, plus modest commission.

34.    During her employment with Defendants, Ms. Joyner occasionally worked over 40 hours per week, 12 hours per day, or 12 hours per shift.  Yet, the Employers failed to pay her overtime premiums for all eligible hours worked.

35.    Ms. Dixon began working Defendants on or about October 10, 2022 as a ticket counter CSA.  Ms. Dixon works at the ticketing counters at Denver International Airport in Denver, Colorado.

36.    From the beginning of Ms. Dixon's employment until approximately July 1, 2023, she was paid an hourly rate of pay, $17.00, plus a modest commission. From approximately July 1, 2023 to November 1, 2023, she earned an hourly rate of pay of $17.29, plus a modest commission. From November 1, 2023 to the present, Ms. Dixon has earned $18.20 hourly, plus a modest commission.

37.     During her employment with Defendants, Ms. Dixon has on occasion worked over 40 hours per week, 12 hours per day, or 12 hours per shift.  Yet, the Employers failed to pay her overtime premiums for all eligible hours worked.

38.     Ms. Hobley worked for Defendants from approximately July 25, 2022 to December 31, 2023 as a gate CSA.  While employed by Defendants, Ms. Hobley worked at the boarding gates at Denver International Airport in Denver, Colorado.

39.     From the beginning of Ms. Hobley's employment until approximately February 1, 2023, she was paid an hourly rate of pay, $17.00, plus a modest commission. From approximately February 1 to December 1, 2023, Ms. Hobley earned an hourly rate of pay of $17.79, plus a modest commission. From December 1, 2023 through December 31, 2023, Ms. Hobley earned $18.50 hourly, plus a modest commission.

40.     During her employment with Defendants, from approximately July 25, 2022 to December 31, 2023, Ms. Hobley often worked over 40 hours per week. From approximately July 25, 2022 to April 1, 2023, Ms. Hobley also often worked 12 hours per day, or 12 hours per shift. Yet, the Employers failed to pay her overtime premiums for all eligible hours worked.

41.     Based on Plaintiffs' observations, experience, and conversations with many other CSAs, they are aware that other CSAs, both ticketing and gate, worked similarly-long hours for the Employers, amounting to over 40 hours per week, 12 hours per day, or 12 hours per shift.

42.     Plaintiffs were only scheduled for shifts ranging from six to eight hours, but the Employers routinely required them to stay past their scheduled shift end times, sometimes adding an additional shift that would require Plaintiffs and other CSAs to work as long as six additional, unscheduled hours after already not having received any breaks. Defendants threatened to write

Plaintiffs up if they requested to leave once their scheduled shifts had ended, resulting in Plaintiffs and other CSAs working two shifts, each often in excess of five hours, without any meal periods or rest periods.

43.     By mandating that Plaintiffs and other CSAs work additional hours after their scheduled shifts had ended, Defendants effectively compelled them to begin second work shifts after they had finished their workdays, without providing them with meal periods or rest periods for those additional shifts.

44.     Despite often requiring Plaintiffs and other CSAs to work additional shifts after the six to eight hours they were scheduled, the Employers did not pay Plaintiffs and the other CSAs all overtime compensation they were entitled to receive at a rate of one and one-half times their regular rates of pay for the overtime hours that they worked.

45.     During the Relevant Period, the Employers automatically deducted 30 minutes from all their CSAs' work time each day, irrespective of whether their employees were able to take an uninterrupted and duty-free 30-minute meal break.

46.     The overwhelming majority of the time, the Employers failed to provide Plaintiffs and other similarly situated employees with 30-minute, uninterrupted, and duty-free meal breaks. The Employers' deduction of meal periods thus deprived Plaintiffs and putative class members of wages they are entitled to receive for time worked.

47.     As a result of deducting time for meal breaks that never actually occurred, and during which Plaintiffs and similarly situated employees actually worked, the paystubs for Plaintiffs and those similarly situated did not reflect all the time they worked and Plaintiffs and similarly situated employees were often deprived overtime compensation.

48.     During the Relevant Period, Plaintiffs and similarly situated CSAs worked consecutive shifts that each exceeded five hours.  As stated above, even if the Employers' hourly, non-exempt CSAs were originally scheduled for a shift of six to eight hours, toward the conclusion of their regular shifts, the Employers required CSAs to remain on duty and work an additional shift, which resulted in CSAs working another shift in excess of five hours on one or more occasions.

49.     During the Relevant Period, Plaintiffs and similarly situated CSAs would often not receive any advance notice of being required to work a second shift until sometimes half an hour or less before their scheduled shift was about to end.

50.     During the Relevant Period, it was practicable for the Employers to provide Plaintiffs and all other CSAs 30-minute, duty-free, uninterrupted meal periods when they worked shifts in excess of five consecutive hours.

51.     Colorado law requires the Employers to ensure their CSAs get two 30-minute, duty-free, uninterrupted meal periods when they work  two shifts that exceed five hours.  *See* 7 CCR 1103-1, Rule 5.1.

52.     During the Relevant Period, Plaintiffs and all other CSAs working for the Employers were not provided with all the duty-free, uninterrupted, 30-minute meal breaks they were entitled to receive, despite the Employers' policy and practice of deducting 30 minutes from their employees' pay for all scheduled shifts worked.

53.     During the Relevant Period, when Plaintiffs and other CSAs working for the Employers worked two shifts that each exceeded five hours in length, the Employers failed or refused to provide Plaintiffs and the putative class members with even one meal period.

54.     The effect of the Employers' failure to provide meal periods for hourly CSAs when they worked two shifts that each exceeded five hoursis that hourly, non-exempt CSAs, including Plaintiffs, were denied earned compensation in the form of earned break entitlements for all hours worked in violation of Colorado law.

55.     As a result of the Employers' uniform policies and practices of failing to provide meal periods for working two shifts that were each in excess of five hours, the CSAs, including Plaintiffs, were systematically denied payment of earned, determinable break entitlements, in violation of Colorado Wage and Hour Law.

56.     In or about November 2022, Ms. Joyner began complaining to her managers, Cathy (last name unknown) and Martha (last name unknown), about the lack of meal periods and rest breaks throughout her shifts. She continued to make regular complaints to both supervisors on numerous occasions throughout the remainder of her employment with Defendants, including several written complaints to Cathy. Ms. Joyner also submitted written complaints to Crystal (last name unknown), a human resources representative, on August 10 and August 24, 2023, which Crystal stated would be shared with her supervisor, Michelle Davidson. Defendants continued to fail to provide meal periods and rest breaks, and they continued to enforce the automatic 30-minute paycheck deductions following Ms. Joyner's complaints.

57.     Ms. Dixon complained to her manager, Martha (last name unknown), about Defendants' failure to provide legally mandated meal periods. Ms. Dixon also complained to Michelle Davison, a human resources representative, several times via email, including on August 21, 2023, August 27, 2023, and September 17, 2023, regarding the Employers' failure to provide meal periods she had earned based on work performed, and pay for all hours she worked.

Ms. Dixon specifically referred Defendants to Colorado law regarding required meal periods and rest breaks in her complaints.  Ms. Davison told Ms. Dixon she would look into the issue, but she never followed up.

58.     When Defendants continued to fail to provide legally required 30-minute meal periods following Ms. Joyner and Ms. Dixon's reports, Ms. Dixon and other employees began taking meal breaks in the 30 minutes immediately after their shift was scheduled to end. The Employers' managers, Justin (last name unknown) and Meredith (last name unknown), threatened to write them up if they continued to use the meal period entitlements they had earned, so Ms. Dixon and other employees ceased doing so.

59.     Defendants continued to enforce the automatic 30-minute meal deduction policy and/or practice, even when CSAs did not receive the use of even one earned meal break entitlement during their shifts.  Defendants further continued to fail to provide Plaintiffs two meal periods when Plaintiffs and other CSAs were required to work two shifts in excess of 5 hours in length. As of July 19, 2024, Defendants continue to fail and refuse to provide Ms. Dixon and other CSAs with the break entitlements they earn during each shift in which they work.

60.     Ms. Hobley also complained to her managers on several occasions regarding the lack of meal periods.  She reported her concerns to Paula Frasier, Lucy Lamb, and Julie (last name unknown). Ms. Lamb replied with comments like, "You have to tough it out, I haven't take my break yet either," and Julie replied, "I know, no one is getting their breaks."

61.     At one point, Ms. Frasier thanked Ms. Hobley and other CSAs for working through the time they should have been permitted to use their earned meal period entitlements.

Ms. Frasier suggested that Ms. Hobley and other CSAs drink liquid meal replacements while working instead of taking the meal periods they had earned.

62.     Ms. Joyner and Ms. Hobley also attempted to report Defendants' failure to provide 30-minute meal breaks when asked whether they had received "break(s)" during Defendants' clocking-out process. However, even when Plaintiffs reported not having received the break entitlements they had earned for work performed, the Employers still deducted at least one 30-minute meal period from their pay per workday.

63.     Ms. Hobley further had to express concerns to the Company that she was not being paid the correct minimum wage, which resulted in a one-time backpay payment from the Employers that was woefully short of the compensation owed to Ms. Hobley and other CSAs.

64.     At all times during the Relevant Period, the Employers did not provide CSAs with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the CSAs worked, as required by Colorado Wage and Hour Law. Nor did the Employers compensate the CSAs for the work they performed during 10-minute periods that the CSAs worked, that should have been compensated rest periods. As a result of not being provided each rest break they earned, the Employers effectively extended the shifts Plaintiffs and CSAs worked by 20 to 30 minutes without compensation for each rest break violation.  In other words, for every instance in which the Employers failed to authorize and permit a 10-minute compensated rest period for Plaintiffs and similarly situated employees, Employers also failed to pay 10 minutes of wages at the CSA's agreed-upon or legally required (whichever is higher) rate of pay.

65.     The overwhelming majority of the time working for the Employers, Plaintiffs and other CSAs did not receive any 10-minute rest breaks.  The Company expected Plaintiffs to work

multiple shifts, often stretching to a total of over 10 hours, without any breaks, particularly when Defendants were short-staffed, which was often.

66.    As a result of the Employers' failure to provide rest periods, Plaintiffs were regularly deprived of rest periods and/or rest period compensation for at least, and often more than, 8 rest periods per week based on a 40-hour workweek. Based on their observations, experience, and conversations with many other CSAs, they also worked without rest periods and/or any compensation for missed rest periods.

67.    Ms. Joyner estimates she worked through at least, and likely more than, 448 rest periods during the Relevant Period.

68.    Ms. Dixon estimates she worked through at least, and likely more than, 656 rest periods during the Relevant Period. As Ms. Dixon still works for Defendants, this number is still increasing.

69.    Ms. Hobley estimates she worked through at least, and likely more than, 584 rest periods during the Relevant Period.

70.    The Colorado Wage Act defines "wages" or "compensation" as including "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." C.R.S. § 8-4-101(14)(a)(II).

71.    Under the terms of Plaintiffs' employment agreements, they were entitled to earn commissions for various actions for which they were instructed to charge a customer under Defendant Frontier's policies. For example, Plaintiffs were supposed to earn $10.00 per bag they required a customer to check because it would not fit in the carry-on sized bin.  They also earned

a $3.00 commission for each boarding pass printed and $5.00 for an in-person passenger check-in. Plaintiffs were supposed to be paid their earned commissions each month.

72.     Upon information and belief, these commission policies came from Defendant Frontier and were implemented by Defendants SGS and ASI.  Upon information and belief, Frontier paid CSAs' commission wages directly to SGS and/or ASI, who then decided whether to pay the commissions to Plaintiffs and other CSAs.

73.     At no point during Plaintiffs' application, interview, or onboarding process did Defendants SGS and ASI specify that there were circumstances under which Defendants could refuse to pay the commissions Plaintiffs and other CSAs had earned. It was only after Plaintiffs began working that Defendants SGS and ASI suddenly implemented new rules to refuse to pay CSAs' earned commissions.

74.     For example, on or about June 1, 2023, the Employers implemented a rule that if there was a single customer complaint—even if it was a complaint about Defendants' bag or ticketing policies and not a complaint directed at the CSAs' level of service—the CSAs' working at the time of the complaint were considered to have forfeited all their earned commissions for the month.

75.     As another example, on or about June 1, 2023, the Employers announced a change to the rule regarding employee absences. Starting June 1, 2023, if any of the CSAs called out for two or more days in a row, they forfeited all their earned commissions for the month, regardless of whether they were ill or their absence was otherwise protected.

76.     Upon information and belief, the customer complaint and attendance rules, as well as decisions around whether to pay employees earned commissions, came directly from Defendant Frontier.

77.     For example, when Defendants applied the complaint rule to force Ms. Hobley to forego her commissions for the month of December 2023, she first submitted a complaint to Eunbi Kim, a Menzies employee who tracked commission payments. Ms. Hobley argued that because the customer's complaint that had caused her to lose out on her commission payments had been about Frontier's bag policy, and not the quality of Ms. Hobley's service, Ms. Hobley should not be forced to forfeit her commissions.

78.     In response, Ms. Kim told Ms. Hobley to reach out to Randy Rugierri, a Frontier employee, who Ms. Kim stated was responsible for making decisions regarding commission payments. Ms. Hobley emailed Mr. Rugierri on or about January 10, 2024. He never responded.

79.     Defendants failed to pay Plaintiffs and other CSAs all earned commissions. For example, the Employers withheld and refused to pay Ms. Hobley's earned commissions during at least four months of her employment with Defendants. Upon information and belief, some CSAs had their commissions withheld by Defendants every single month.

## CLASS ALLEGATIONS

80.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully and separately herein.

81.     In addition to bringing their claims individually, Plaintiffs also bring this case as a class action under C.R.C.P. 23 on behalf of the following classes and sub-classes:

**SGS/ASI CWA Class**: All individuals who worked for SGS/ASI as a Customer

Service Agent in Colorado from May 14, 2021 to the present.[1]

**Frontier CWA Class:** All individuals who worked for Frontier as a Customer Service Agent in Colorado from May 14, 2021 to the present.

**SGS/ASI CMWA Class:** All individuals who worked for SGS/ASI as a Customer Service Agent in Colorado from May 14, 2018 to May 13, 2021.[2]

**Frontier CMWA Class:** All individuals who worked for Frontier as a Customer Service Agent in Colorado from May 16, 2020 to May 13, 2021.

**SGS/ASI CWA Second-Shift Meal Period Sub-Class:** All of SGS/ASI's Customer Service Agents who worked a second shift in excess of 5 hours in Colorado from May 14, 2021 to the present.

**Frontier CWA Second-Shift Meal Period Sub-Class:** All of Frontier's Customer Service Agents who worked a second shift in excess of 5 hours in Colorado from May 14, 2021 to the present.

**SGS/ASI CMWA Second Shift Meal Period Sub-Class:** All of SGS/ASI's Customer Service Agents who worked a second shift in excess of 5 hours in Colorado from May 14, 2018 to May 13, 2021.

**Frontier CMWA Second-Shift Meal Period Sub-Class:** All of Frontier's Customer Service Agents who worked a second shift in excess of 5 hours in Colorado from May 16, 2020 to May 13, 2021.

82.     The foregoing Classes and Sub-Classes (collectively, "Classes") satisfy the prerequisites and requirements of C.R.C.P. 23:

83.     The Classes consist of dozens of employees and former employees. Joinder of all such employees would be impracticable.

---

[1] *See* C.R.S. § 8-4-122 (setting out three-year statute of limitations for willful violations of CWA).

[2] *See Rodriguez v. 5830 Rest. Corp.*, No. 21-CV-01166-KLM, 2023 WL 1507195, at *6 (D. Colo. Feb. 3, 2023) (citing cases where six-year statute of limitations was applied to claims brought under Colorado Minimum Wage Orders and COMPS Orders, as well as contrary authority, in holding that statute of limitations "is an unsettled question of Colorado law"); *Perez v. By the Rockies, LLC*, 543 P.3d 1054, 1055 (Colo. App. 2023) (holding the applicable statute of limitations period for claims brought under the Colorado Minimum Wage Act is six years).

a.  There are questions of law and fact that are common to the Classes, which questions predominate over issues affecting only individual Class Members, including but not limited to:

    i.  Whether the Employers are covered by Colorado Wage and Hour Law;

    ii.  Whether the Employers had a uniform policy or practice of failing to pay overtime compensation to CSAs in violation of Colorado Wage and Hour Law;

    iii.  Whether the Employers failed to provide rest periods, or rest period compensation, to CSAs as required by Colorado Wage and Hour Law;

    iv.  Whether the Employers violated Colorado Wage and Hour Law by making deductions for meal periods CSAs were not provided;

    v.  Whether the Employers violated Colorado Wage and Hour Law by failing to provide CSAs second-shift meal periods for shifts worked in excess of 5 hours;

    vi.  Whether the Employers owe CSAs compensation as a result of failing to provide CSAs second-shift meal periods for shifts worked in excess of 5 hours;

    vii.  Whether the Employers violated Colorado Wage and Hour Law by withholding and failing to pay CSAs' earned commissions during the Relevant Period;

    viii.  Whether the Employers' violations of Colorado Wage and Hour Law were "willful" as a matter of law; and

ix.   (For the CMWA Classes) The statute(s) of limitations applicable to the Class Members' claims.

84.    Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs were subject to the policies and practices that are at issue in this action: the Employers failed to pay all overtime compensation; failed to provide rest periods or rest period compensation; failed to provide meal periods or compensation for missed meal periods Plaintiffs' earned and worked through, despite the Employers' improper deductions from Plaintiffs' pay for meal periods Plaintiffs' never received; and failed or refused to pay all earned commissions.

85.    Plaintiffs will each fairly and adequately protect the interests of the Classes. They have retained counsel that is experienced in wage and hour class litigation, and Plaintiffs and their counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Classes.

86.    The prosecution of this case as a class action is superior to other methods of adjudication.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Employers.  Adjudications with respect to individual Class Members would as a practical matter be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests. The Employers have acted on grounds generally applicable to the Classes. Moreover, other than Plaintiffs, no Class Member has commenced their own litigation on behalf of other Colorado CSAs.

**FIRST CLAIM FOR RELIEF**
**Failure to Pay All Earned, Vested, and Determinable Wages, including Overtime**
**Compensation, in Violation of Colorado Wage and Hour Law**
**C.R.S. § 8-4-101 *et seq.***
**7 C.C.R. 1103-1**
***On behalf of Plaintiffs and the CWA Classes***
**Against All Defendants**

87.     Plaintiffs incorporate by reference all the allegations contained in the above paragraphs as though set forth separately herein.

88.     At all times relevant to this Complaint, Plaintiffs and CWA Class Members were "employees" subject to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

89.     At all times relevant to this Complaint, SGS, ASI, and Frontier were "employers" subject to the requirements and prohibitions of the CWA. *See* C.R.S. § 8-4-101(6).

90.     The CWA requires employers to pay all "wages" and "compensation" earned by employees in a timely manner, which generally must be 30 days or fewer from the date on which the wages/compensation are earned. C.R.S. § 8-4-103(1)(a).

91.     The wages/compensation due to employees generally must include overtime compensation at a rate of one and one-half times the employees' regular rate(s) of pay for all hours worked in excess of 40 per week, 12 per day, and/or 12 per shift. *See* 7 C.C.R. 1103-1, Rule 4.

92.     The CWA defines "wages" and/or "compensation" to include: "(I) All amounts for labor or service performed by employees [that are] earned, vested, and determinable;" and (II) "Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement." C.R.S. § 8-4-101(14)(a).

93.     A commission is wages/compensation due to an employee if/when it is: (A) "earned," meaning that the employee performed the work they had to perform; (B) "in accordance

with the terms of any agreement," meaning that any *lawful* conditions that had to be met before the bonus would be paid were in fact met; and (C) "determinable," meaning that the dollar amount of the bonus/commission was capable of being calculated.  *See* C.R.S. § 8-4-101(14)(a)(I) and (II); *see also Nieto*, 488 P.3d at 1145 (defining "earned" as meaning "owed as a return for… work done or services rendered.").

94.     Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to "tender" such wages/compensation within 14 days of receiving a "written demand" are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;" or (B) quadruple damages, if the employee *is* able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b); *see Graham v. Zurich Am. Ins. Co.*, 296 P.3d 347, 349-50 (Colo. App. 2012) ("penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days").

95.     In addition, employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages. C.R.S. § 8-4-110(b); *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014).

96.     The Employers violated the CWA by failing to pay overtime compensation to Plaintiffs and the other CWA Class Members for the hours they worked over 40 per week, 12 per day, and/or 12 per shift.

97.     The Employers further violated the CWA by failing to pay Plaintiffs and Class Members all wages earned for time worked during meal breaks that were not provided, but were nonetheless improperly deducted from Plaintiffs' and Class Members' pay.

98.     The Employers also violated the CWA by failing to pay all earned commissions to Plaintiffs and other CWA Class Members.

99.     Upon filing and service of this Complaint on the Employers, Plaintiffs and CWA Class Members are making a written demand for payment of all unpaid overtime and commission compensation in compliance with C.R.S. § 8-4-109.  *See Damitio v. Sushi Zanmai Inc.*, No. 12-CV-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013) (Complaint requesting a specific amount and specifying where the defendants could tender payment was a "written demand" and holding that "nothing precludes a complaint from functioning as the 'written demand' mandated by the statute"); *Fracasse v. Ablaze Energy*, No. 15-CV-2192-WJM-NYW, 2016 WL 8577551, at *4 (D. Colo. July 1, 2016) ("Plaintiff filed a written demand for payment in the form of his Complaint"); *see also Latham v. High Mesa Commc'ns*, No. 17-CV-2118-JLK-GPG, 2020 WL 1317421, at *7–8 (D. Colo. Jan. 13, 2020), *report and recommendation adopted*, No. 17-CV-02118-JLK-GPG, 2020 WL 1626976 (D. Colo. Feb. 7, 2020) (holding that demand letter that did not specify any amount, together with the complaint, could have functioned as "written demand").

100.    Employers further violated the CWA by failing to tender regular rate, overtime, and commission compensation due to Plaintiffs and the other CWA Class Members within 14 days of being served with Plaintiffs' Individual and Class Action Complaint on May 17, 2024.

101.    At all times relevant to this Complaint, the Employers knew or should have known that they were required to pay regular rate, overtime, and commission compensation to Plaintiffs and the other CWA Class Members. As such, their violations were willful. *See Mumby*, 636 F.3d at 1270.

102.    Accordingly, the Employers are liable to Plaintiffs and the CWA Class Members

for unpaid regular rate and overtime compensation, unpaid commissions, mandatory penalties under C.R.S.§ 8-4-109(3)(b)(I), additional penalties under C.R.S.§ 8-4-109(3)(b)(II), reasonable attorney's fees, and costs. *See* C.R.S. §§ 8-4-109; 8-4-110.

**SECOND CLAIM FOR RELIEF**
**Improper Deductions in Violation of the Colorado Wage Act**
**C.R.S. § 8-4-101 *et seq.***
**On behalf of Plaintiffs and the CWA Classes**
**Against All Defendants**

103.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully and separately herein.

104.    Under the CWA, "employers 'shall [not] make a deduction from the wages or compensation of an employee' except as specifically enumerated under Colorado Revised Statue Annotated § 8-4-105." *Latham v. High Mesa Commc'ns*, No. 17-CV-2118-JLK-GPG, 2020 WL 1317421, at *10 (D. Colo. Jan. 13, 2020).

105.    The only deductions permitted under C.R.S. § 8-4-105 are: (1) Tax deductions and deductions authorized by court orders; (2) Deductions for retirement contributions; (3) Deductions for loans, advances, goods or services, and equipment or property provided to an employee pursuant to a written agreement, so long as the agreement is "enforceable and not in violation of law;" (4) Deductions necessary to cover a shortage due to theft by the employee, where a police report regarding the theft has been filed; and (5) Revocable deductions, including for insurance, savings plans, stock purchases, supplemental retirement plans, charities, and deposits to financial institutions. *See* C.R.S. § 8-4-105(1).

106.    The CWA declares that "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."

C.R.S. § 8-4-121.

107.    The Employers violated the CWA by making deductions from Plaintiffs and the CWA Class Members' compensation for meal periods that were not provided.

108.    The Employers further violated the CWA by making deductions from Plaintiffs and the CWA Class Members' earned compensation to withhold employees' commissions based on arbitrary and inconsistent requirements intended punish employees for unrelated issues the Employers characterized as attendance and performance issues.

109.    The Employers further violated the CWA by failing to tender the wages due to Plaintiffs and the other CWA Class Members within 14 days of receiving service of Plaintiffs' Individual and Class Action Complaint on May 17, 2024.

110.    Because the Employers knew or should have known that the wage deductions it made from its employees' wages were a violation of the CWA, Defendants' violations of the CWA were willful. *See Mumby*, 636 F.3d at 1270.

111.    Accordingly, the Employers are liable to Plaintiffs and the other CWA Class Members for back wages, mandatory penalties, additional penalties, reasonable attorney's fees, and costs. *See* C.R.S. §§ 8-4-109; 8-4-110.

**THIRD CLAIM FOR RELIEF**
**Failure to Provide Rest and Meal Periods, in Violation of the Colorado Wage Act**
**C.R.S. § 8-4-101 *et seq.***
**7 C.C.R. 1103-1**
***On behalf of Plaintiffs, the CWA Classes, and the CWA Second-Shift Meal Period Sub-Classes***
**Against All Defendants**

112.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully and separately herein.

113.    Under the CWA, employers are required to provide employees with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the employees work. 7 C.C.R. 1103-1, Rule 5.2 (2021-2024). "When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation." *See Pilmenstein*, 492 P.3d at 1064-66.

114.    The Employers violated the CWA by failing to provide rest periods to Plaintiffs and the other CWA Class Members, or to compensate the CSAs for the rest periods that were not provided to them.

115.    The Employers further violated the CWA by failing to provide Plaintiffs and the other CWA Class Members with all the duty-free, uninterrupted, 30-minute meal breaks they were entitled to receive, despite the Employers' policy and practice of deducting 30 minutes from their employees' pay for each scheduled shift worked.

116.    The Employers further violated the CWA by failing to provide Plaintiffs and the other CWA Second-Shift Meal Period Sub-Class Members who worked two shifts in excess of 5 hours in length with a second (or, often even a first) meal period.

117.    The Employers further violated CWA by failing to tender the wages due to Plaintiffs and the other CWA Class and Sub-Class Members within 14 days of being served with Plaintiffs' Individual and Class Action Complaint on May 17, 2024.

118.    Because the Employers knew or should have known that they were required to provide rest periods and meal periods to CSAs and failed to do so, the Employers' violations of the CWA were willful as a matter of law.

119.    Accordingly, the Employers are liable for unpaid wages for each rest period and

meal period that was not provided, mandatory penalties, additional penalties, reasonable attorney's fees, and costs. *See Pilmenstein*, 492 P.3d at 1064-66; *Nieto*, 488 P.3d at 1145.

**FOURTH CLAIM FOR RELIEF**
**Failure to Pay Wages in Violation of the Colorado Minimum Wages of Workers Act**
**C.R.S. § 8-6-101 *et seq.***
**7 C.C.R. 1103-1 (2018-2021)**
***On behalf of Plaintiffs and the CMWA Classes***
**Against All Defendants**

120.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully and separately herein.

121.    At all times relevant to this Complaint, Plaintiffs and CMWA Class Members were "employees" subject to the protections of the CMWA.  *See* C.R.S. § 8-4-101(5).

122.    At all times relevant to this Complaint, the Employers were "employers" covered by and subject to the requirements and prohibitions of the CMWA. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1:2 (2017-2020).

123.    At all times relevant to this Complaint, the CMWA required the Employers to pay Plaintiffs and the other CMWA Class Members overtime compensation at a rate of one and one-half times their regular rates of pay for all hours worked over 40 per week, 12 per day, and/or 12 per shift. *See* 7 C.C.R. 1103-1, Rule 4; 7 C.C.R. 1103-1:4 (2018-2021).

124.    The Employers violated the CMWA by failing to pay regular rate, overtime, and commission compensation due to Plaintiffs and the other CMWA Class Members.

125.    As such, the Employers are liable to Plaintiffs and the other CMWA Class Members for unpaid regular rate, overtime, commission compensation, reasonable attorney's fees, and costs. *See* C.R.S § 8-6-118.

**FIFTH CLAIM FOR RELIEF**
**Failure to Provide Rest and Meal Periods, in Violation of the Colorado Minimum Wages**
**of Workers Act**
**C.R.S. § 8-6-101 *et seq.***
**7 C.C.R. 1103-1 (2018-2021)**
***On behalf of Plaintiffs, the CMWA Classes, and the CMWA Second Meal Period Sub-Classes***
**Against All Defendants**

126.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully and separately herein.

127.    At all times relevant to this Complaint, the CMWA required the Employers to provide CSAs with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the CSAs worked.

128.    The Employers violated the CMWA by failing to provide rest periods to Plaintiffs and the other CMWA Class Members, or to compensate the CSAs for the rest periods that were not provided to them.

129.    The Employers further violated the CMWA by failing to provide Plaintiffs and the other CMWA Class Members with all the duty-free, uninterrupted, 30-minute meal breaks they were entitled to receive, despite the Employers' policy and practice of deducting 30 minutes from their employees' pay for each scheduled shift worked.

130.    The Employers further violated the CMWA by failing to provide Plaintiffs and the other CWA Second Meal Period Sub-Class Members who worked a second shift in excess of 5 hours in length with a second (or, often even a first) meal period.

131.    As such, the Employers are liable to Plaintiffs, the CMWA Class Members, and the CMWA Second Meal Period Sub-Class Members for unpaid minimum wages, reasonable attorney's fees, and costs. *See* C.R.S § 8-6-118.

## PRAYER FOR RELIEF

For the reasons set forth above, judgment should be entered for Plaintiffs, and against Defendants; and Plaintiffs, the SGS/ASI and Frontier CWA Classes, the SGS/ASI and Frontier CMWA Classes, the SGS/ASI and Frontier CWA Second-Shift Meal Period Sub-Classes, and the CWMA Second-Shift Meal Period Sub-Classes should be awarded:

A.   A declaratory judgment condemning the Defendants' violations of Colorado Wage and Hour Law;

B.   A permanent injunction prohibiting the Defendants from continuing to violate Colorado Wage and Hour law;

C.   At the earliest practicable time, the Court should certify the SGS/ASI and Frontier CWA Classes, the SGS/ASI and Frontier CMWA Classes, the SGS/ASI and Frontier CWA Second-Shift Meal Period Sub-Classes, and the SGS/ASI and Frontier CMWA Second-Shift Meal Period Sub-Classes pursuant to C.R.C.P. 23, appoint Plaintiffs and their counsel to represent the Classes and Sub-Classes, and authorize notice of this action to be sent to all potential Class Members;

D.   To Plaintiffs, the SGS/ASI and Frontier CWA Class Members and the SGS/ASI and Frontier CWA Second-Shift Meal Period Sub-Class Members:

    a.   Back wages, including unpaid regular rate, commission, and overtime compensation, missed rest period and meal period compensation, and reimbursement for unlawful deductions, in amounts to be determined at trial;

    b.   Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) in an amount to be determined at trial; and

    c.  Additional penalties under C.R.S. § 8-4-109(3)(b)(II) in an amount to be determined at trial;

E.    To Plaintiffs, the SGS/ASI and Frontier CMWA Class Members, and the SGS/ASI and Frontier CMWA Second Meal Period Sub-Class Members:

    a.  Minimum wages, including unpaid overtime compensation, in amounts to be determined at trial; and

    b.  unpaid rest period and meal period compensation, in amounts to be determined at trial;

F.    Plaintiffs' and Class Members' reasonable attorney's fees;

G.    The costs incurred by Plaintiffs and the Class Members in this action; and

H.    All other and further relief that the Court or the jury may find to be equitable, appropriate, and just.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted this 19th day of July, 2024.

HKM EMPLOYMENT ATTORNEYS LLP

By: */s/ Shelby Woods*
    Shelby Woods, #48606
    Abby Zinman, #57792
    HKM Employment Attorneys LLP
    518 17th Street, Suite 1100
    Denver, Colorado 80202
    Phone: (720) 235-0105
    Fax: (720) 668-8989
    E-mail: swoods@hkm.com
            azinman@hkm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2024, a true and correct copy of the foregoing **FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT** was filed and served via CM/ECF on the following:

Michael F. Ryan
Foley & Lardner, LLP
1400 16th Street, Suite 200
Denver, Colorado 80202
(720) 437-2000
(720) 437-2200
mryan@foley.com

*Attorneys for Defendants Simplicity Ground Services LLC, d/b/a Menzies Aviation; and Aircraft Service International, Inc., d/b/a Menzies Aviation*

Jennifer S. Harpole
Carolyn B. Theis
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Phone: 303.629.6200
Fax: 303.629.0200
jharpole@littler.com
catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

*/s/ Tammy Harris*
Tammy Harris