**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:24-cv-01672-SKC-KAS

CHIQUITA JOYNER, HELEN DIXON, and
TAJAHNE HOBLEY, *on behalf of themselves
and all others similarly situated,*

        Plaintiffs,

v.

FRONTIER AIRLINES, INC., *a Colorado corporation,*
SIMPLICITY GROUND SERVICES LLC,
D/B/A MENZIES AVIATION, *a Delaware limited liability company,* and
AIRCRAFT SERVICE INTERNATIONAL, INC.,
D/B/A MENZIES AVIATION, *a Delaware corporation,*

        Defendants.

---

**DEFENDANT FRONTIER AIRLINES INC.'S MOTION TO COMPEL
ARBITRATION AND DISMISS, ADMINISTRATIVELY CLOSE,
OR STAY THIS ACTION**

---

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Defendant

Frontier Airlines, Inc. ("Frontier") respectfully requests the Court compel arbitration,

dismissing the First Amended Individual and Class Action Complaint [ECF #21]

("FAC") filed by Plaintiffs Chiquita Joyner, Helen Dixon, and Tajahne Hobley

(collectively, "Plaintiffs"), or alternatively, administratively closing or staying this

action pending arbitration.

Plaintiffs should be compelled to arbitration because they entered into valid

agreements to arbitrate disputes relating to their employment to which the FAA

applies. Plaintiffs are equitably estopped from arguing the arbitration agreements do not apply as to Frontier when their entire theory of liability as to Frontier rests on a joint employment theory. The arbitration agreements are not contracts of employment, and Plaintiffs are not "transportation workers;" thus, the exemption under § 1 of the FAA does not apply. Plaintiffs are customer service representatives whose primary responsibilities are to provide information and instructions to customers, not to transport goods in interstate commerce. Because the FAA applies and Plaintiffs' arbitration agreements contain enforceable delegation clauses, the Court's inquiry must end, and it must compel Plaintiffs to arbitration, dismissing, administratively closing, or administratively closing this litigation.

## CERTIFICATE OF CONFERRAL

Undersigned counsel conferred with Plaintiffs' counsel who confirmed Plaintiffs oppose this Motion and the relief sought herein.

## I.    FACTUAL BACKGROUND

### A.    Plaintiffs Are Customer Service Agents Employed by Menzies

Plaintiffs are Customer Service Agents ("CSAs") employed solely by Defendants Simplicity Ground Services LLC, d/b/a Menzies Aviation ("SGS") and Aircraft Service International, Inc., d/b/a Menzies Aviation ("ASI") (collectively, "Menzies"); Frontier is not a joint employer. *See* ECF #27 at p. 2, n.1. Plaintiffs work at the Denver International Airport ("DIA") at the check-in and ticketing counter and gates associated with Frontier. ECF #21 at ¶¶ 1, 32, 35, 38; ECF #27 at p. 3-6. CSAs

working at the check-in and ticketing counter rotate between the kiosks, bag drop counter, and agent-assist counter. ECF #21 at p. 3-4. When working at the kiosk station, CSAs verbally and visually instruct customers on how to print and attach bag tags and how to place their bags on the automated scales and conveyor belts. *Id.* at p. 4. When working at the bag drop counter, CSAs check customer identification paperwork and boarding passes before instructing customers to place their checked baggage onto the automated scales and conveyor belts. *Id.* When working at the agent assist counter, CSAs assist customers who (i) missed flights with booking new flights, (ii) need or want printed tickets, and (iii) have oversized or overweight bags. *Id.* at p. 5. When working at the gates, CSAs check customer boarding passes and identification and ensure carry-on bags do not exceed size limits. *Id.* at p. 6. If a carry-on bag exceeds the size limit, the CSA prints a bag tag for the customer and instructs them to drop the tagged bag off at the end of the boarding ramp before boarding the aircraft. *Id.* Regardless of where they are stationed, Plaintiffs are not responsible for handling customer baggage. *Id.* at p. 4-6. Customers are responsible for attaching tags to their own bag tags, placing their bags on the automated scales and conveyor belts, and dropping their bags off at the bag drop station or at the end of the boarding ramp before boarding the aircraft. *Id.* On very rare occasions, a CSA may help a customer load their bag onto the conveyor belt system if the customer appears to be in need of physical assistance. *Id.* at p. 5-6. This occurs with less than 1% of all checked baggage belonging to Frontier customers. *Id.* at p. 6.

**B.    Plaintiffs Are Bound By Arbitration Agreements With Delegation Clauses**

Plaintiffs each entered into arbitration agreements (the "Arbitration Agreements"), expressly "contractual in nature," which require individual arbitrations as the exclusive means for resolving any disputes "relating to" their employment with Menzies, including but not limited to "claims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, . . . failure to provide meal and/or rest breaks, and/or other claims involving employee wages." ECF #27-1 at Exs. B-D at p. 4, 6, 8. The Arbitration Agreements are supported by consideration—specifically, the parties' mutual agreement to mandatory and exclusive arbitration and Menzies' agreement to pay arbitration fees. *See* ECF #27-1 at Exs. B-D, at p. 4, 6, 8. The Arbitration Agreements include an unequivocal "waiver of all rights to a civil court action" for "all disputes" related to their employment. ECF #27-1 at Exs. B-D at p. 5, 7, 9 (emphasis added). In addition, the Arbitration Agreements expressly prohibit Plaintiffs from participating in any class action. ECF #27-1 at Exs. B-D at p. 4-9. The Arbitration Agreements also contain an unambiguous delegation clauses stating, "Only an arbitrator, not a judge or jury, will decide the dispute, and any dispute relating to the interpretation or application of this Agreement, including enforceability, revocability, or validity, shall be decided by an arbitrator and not by a court or judge." ECF #27-1 at Exs. B-D at p. 5, 7, 9. Plaintiffs were given the opportunity to opt out of the Arbitration Agreements but elected to agree to be bound by them. *See* ECF #27-1 at Exs. B-D at p. 5, 7, 9 ("I

4

agree that my failure to opt out will demonstrate my intention to be bound by this
Agreement. . .").

## II.    LEGAL ARGUMENT

### A.    THE COURT SHOULD COMPEL ARBITRATION

#### 1.    Plaintiffs' Claims Fall Within The Scope Of Valid Agreements To Arbitrate

"A court addressing a motion to compel arbitration ... must first determine
whether there exists an enforceable agreement to arbitrate," "apply[ing] ordinary
state-law principles that govern the formation of contracts." *McGuire v. Carmax
Business Services LLC, et al.,* No. 1:23-CV-02938-NYW-SBP, 2024 WL 3897073, at \*5
(D. Colo. Aug. 16, 2024), quoting *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823,
832 (10th Cir. 2023); *Matzdorf v. Uponor, Inc.*, No. 21-CV-02057-RM-STV, 2022 WL
17547941, at \*3 (D. Colo. Aug. 24, 2022) ("[t]he existence of an agreement to arbitrate
is a threshold matter which must be established before the FAA can be invoked.").
Here, the intent of the parties to submit to arbitration is manifested by the plain
terms of the Arbitration Agreements coupled by Plaintiffs' signatures. *See McGuire,*
2024 WL 3897073, at \*7; *Clark v. Colorado Div. of Sec.*, No. 1:23-cv-02170-SKC-JPO,
2024 WL 1719450, at \*3 (D. Colo. Apr. 22, 2024) (Where the parties sign an agreement
agreeing to submit "all disputes" to binding arbitration, a valid arbitration agreement
exists). The Arbitration Agreements are also supported by consideration. *See* ECF
#27-1 at Exs. B-D at p. 4-9 (reflecting the parties' mutual promises to be bound and
submit to mandatory and exclusive arbitration, and Menzies' agreement to pay

5

arbitration fees); *City of Colo. Springs v. Mountain View Elec. Ass'n, Inc.,* 925 P.2d

1378, 1383 (Colo. App. 1995) ("A promise exchanged for a promise imposes mutual

obligations and is sufficient consideration to render a contract enforceable."). Thus,

the Arbitration Agreements are valid. Further, the Arbitration Agreements also

indisputably encompass Plaintiffs' claims in their entirety. *See* ECF #21; 27-1 at Exs.

B-D at p. 4-9 (covering any disputes "relating to" Plaintiffs' employment, including

but not limited to "claims alleging failure to compensate for all hours worked, failure

to pay overtime, failure to pay minimum wage, . . . failure to provide meal and/or rest

breaks, and/or other claims involving employee wages.").

### a.      The Arbitration Agreements Contain Unambiguous Delegation Clauses

Plaintiffs may contend Frontier cannot enforce the Arbitration Agreements as

a non-signatory, but that is not for the Court to decide. *See O'Connor v. BMW of N.

Am., LLC*, No. 18-CV-03190-CMA-STV, 2020 WL 5260416, at *3 (D. Colo. July 23,

2020) ("whether a particular arbitration provision may be used to compel arbitration

between a signatory and a nonsignatory is a threshold question of arbitrability")

(internal citations and quotations omitted). The parties agreed to delegate such

issues, including disputes relating to "enforceability," "revocability," "validity,"

"interpretation," and "application," to the arbitrator. *See* ECF #27-1 at Exs. B-D at p.

5, 7, 9 ("Only an arbitrator, not a judge or jury, will decide the dispute, and any

dispute relating to the interpretation or application of this Agreement, including

enforceability, revocability, or validity, shall be decided by an arbitrator and not by a

court or judge."); *Casa Arena Blanca LLC v. Rainwater by Estate of Green,* No. 21-2037, 2022 WL 839800, at \*5 (10th Cir. Mar. 22, 2022) (holding an arbitration agreement between two parties contained an enforceable delegation clause and thus, that the district court should have compelled arbitration rather than determining whether the arbitration agreement could be enforced against a third party as a beneficiary); *O'Connor,* 2020 WL 5260416, at \*3 (defendant "met its burden of demonstrating the existence of enforceable arbitration agreements. Those agreements clearly delegate questions of arbitrability to the arbitrator. Therefore, the Court abstains from resolving the issue of whether [defendant] is a third-party beneficiary that is covered by the scope of the agreements.").

### b. Regardless, Plaintiffs Are Estopped From Escaping Arbitration With Respect To Frontier

Even if the Court were to decide whether Frontier can enforce the Arbitration Agreements, the outcome should be the same: Plaintiffs should be compelled to arbitration. By relying upon a joint-employer theory, Plaintiffs are estopped from escaping arbitration with respect to Frontier despite its non-signatory status. "To hold otherwise would permit near-identical labor law claims against a joint employer and a direct employer to proceed simultaneously in separate forums, even though such claims carry joint and several liability." *Silvester v. Samsung Elecs. Am., Inc.,* No. 20-CV-4002 (JPO), 2021 WL 1063341, at \*1 (S.D.N.Y. Mar. 18, 2021); *see also Green v. Fishbone Safety Sols., Ltd.,* No. 16-CV-01594-PAB-KMT, 2017 WL 11545529, \*6 (D. Colo. Sep. 7, 2017) (plaintiff was equitably estopped from avoiding arbitration

as to the non-signatory defendant due to joint employer theory where both defendants were allegedly "liable for allegedly unpaid overtime under the FLSA," reasoning plaintiff's claims against the non-signatory were intertwined sufficiently with plaintiff's contractual relationship with the signatory, which included the arbitration agreement, such that the plaintiff could not avoid arbitration as to the non-signatory defendant); *Pryse v. Furniture Row Colo, LLC,* No. 20-CV-01081-RM-KMT, 2021 WL 5354050, at \*3 (D. Colo. Feb. 22, 2021), report and recommendation adopted, No. 20-CV-01081-RM-KMT, 2021 WL 5354842 (D. Colo. Mar. 11, 2021) (plaintiffs equitably estopped from avoiding arbitration as to non-signatory defendants where plaintiff's claims against the non-signatory defendants were intertwined sufficiently with plaintiff's contractual relationship with the signatory defendant, which included an arbitration agreement, and included allegations that the defendants were dual employers and alter egos of each other); *Walls v. Kelly Servs., Inc., No.* 20-2001 (MJD/BRT), 2021 WL 1117853, at \*4 (D. Minn. Mar. 24, 2021) (compelling arbitration despite non-signatory defendant where plaintiff alleged non-signatory defendant and signatory defendant jointly employed her and the allegations pled in the complaint were against "Defendants," without differentiating between the two); *Bonner v. Mich. Logistics Inc.,* 250 F. Supp. 3d 388, 397–98 (D. Ariz. 2017) (plaintiff equitably estopped from avoiding arbitration against non-signatory defendant where plaintiff attempted to hold defendants liable for FLSA violations under joint employer theory); *Green v. Mission Health Communities, LLC*, No. 3:20-CV-00439, 2020 WL 6702866,

8

at *8 (M.D. Tenn. Nov. 13, 2020) ("courts around the country have almost uniformly concluded that the plaintiff in this situation, particularly when the plaintiff alleges joint employment, is estopped from avoiding arbitration with the non-signatory.").

### 2.    The FAA Applies

Next, the Court must determine whether the FAA applies such that it can enforce the delegation clause and compel arbitration. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019). The FAA governs any arbitration agreement that affects commerce in any way, even tangentially, including those arising out of the employment context. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995); *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004). Here, the disputes at issue relate to Plaintiffs' employment with Menzies, which "provide[s] services to airlines [including Frontier, an authorized carrier of passengers and freight in interstate commerce], including passenger services such as ticketing, check-in, and boarding." ECF #21 at ¶ 12. Thus, the FAA applies to the Arbitration Agreements at issue and preempts any state law that might otherwise apply. *See Martinez-Gonzalez v. Elkhorn Packing Co., LLC,* 635 F. Supp. 3d 883, 891 (N.D. Cal. 2022) ("Defendants are engaged in interstate commerce; accordingly, Plaintiffs' employment with Defendants—to which the arbitration agreements apply—affects commerce within the meaning of the FAA."); *Perry v. Thomas,* 482 U.S. 483, 490 (1987) (FAA preempted state wage claim statute authorizing state court actions regardless of "the existence of any private agreement to arbitrate"); *Brownlee*

9

*v. Lithia Motors, Inc.,* 49 F. Supp. 3d 875, 882 (D. Colo. 2014) ("the Wage Act does not mandate a forum or venue, nor can it demand that a court (as opposed to an arbitrator) hear and decide Wage Act claims"); *Grohn v. Sisters of Charity Health Servs. Colorado,* 960 P.2d 722, 727–28 (Colo. App. 1998) ("the arbitration agreement between defendants and Grohn is within the coverage of the FAA and that §§ 8–4–123 and 8–4–125 conflict with § 2 of the FAA. Therefore, the FAA controls pursuant to the Supremacy Clause.").

### a.    The Section 1 Exemption Does Not Apply

The Arbitration Agreements are not exempt from the FAA as "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" because: (1) the Arbitration Agreements are not "contracts of employment," and (2) Plaintiffs do not belong to a "class of workers engaged in foreign or interstate commerce" (*i.e.*, they are not "transportation workers").

### i.    The Agreement Is Not a "Contract of Employment"

The exemption applies only to "contracts of employment." 9 U.S.C. § 1. "[C]ontracts of employment' refer[] to agreements to perform work." *Oliveira,* 586 U.S. at 121. "Agreements to perform work" mean, "agreements that require independent contractors [or employees] to perform work," "promise[s] work and compensation to an individual employee" and contain "hallmarks" such as "provisions regarding salary, benefits, and leave time." *Id.* at 114; *Amos v. Amazon Logistics, Inc.*,

10

74 F.4th 591, 596 (4th Cir. 2023). "[A]rbitration agreements . . . do not constitute 'contracts of employment' where the arbitration agreement is 'not contained' in a broader employment agreement between the parties." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 121 (2d Cir. 2010) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991)). Here, the Arbitration Agreements are not agreements to perform work; nor are they contained within any broader employment agreement. They are separate, standalone agreements. Thus, the exemption is inapplicable.

### ii.    Plaintiffs Are Not Transportation Workers

In addition, the exemption applies only to "employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Congress sought to exclude such workers from the FAA because "it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers" (*e.g.*, employees subject to the Railway Labor Act, which includes a mandatory dispute resolution procedure). *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001) .

In *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), the Supreme Court prescribed a two-step inquiry to determining whether a person falls within the exemption: first, the Court should define the relevant "class of workers" to which the plaintiff belongs, and second, the Court should determine whether the class of workers is "engaged in foreign or interstate commerce." *Id.* at 455. The first inquiry focuses on the actual work performed by the plaintiff, not on the activities of the

businesses for which they work. *Id.* at 456 (plaintiff was "a member of a 'class of workers' based on what she does at Southwest [Airlines], not what Southwest does generally."); *Brock v. Flowers Food, Inc.,* 673 F. Supp. 3d 1180, 1186 (D. Colo. 2023) (in defining a "class of workers," courts should look to "the actual work that the members of the class, as a whole, typically carry out."). In *Saxon*, the plaintiff's typical work activities placed her in "a class of workers who physically load and unload cargo on and off airplanes on a frequent basis." *Saxon*, 596 U.S. at 456.

Regarding the second inquiry, *Saxon* makes clear that the class of workers to which the plaintiff belongs must be "directly involved in transporting goods across state or international borders," meaning they "must at least play a direct and necessary role in the free flow of goods across borders" and "be actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 457-58 (internal quotation marks and citation omitted). Stated differently, employees whose job duties are infrequently or "tangentially related to movement of goods" are not exempt. *See Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351-52 (8th Cir. 2005) (customer service representative whose primary job was to provide information services to customers and never directly transported goods in interstate commerce, had no direct responsibility for transporting goods in interstate commerce, never handled any of the packages that the defendant delivered, and did not directly supervise the defendant's drivers in interstate commerce, was not a "transportation worker" despite having "a duty to coordinate freight flow by

expediting movement of shipment and contacting terminal and/or central dispatch"),

*citing Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1284 (11th Cir. 2001)

(airport security guard whose primary job was to "inspect[] goods, materials, and

people that were headed to locations around the United States and, indeed, around

the world," was not a "transportation worker" because she did not participate in the

actual movement of goods in commerce.); *Veliz v. Cintas Corp.,* No. C 03-1180 SBA,

2004 WL 2452851, at *10 (N.D. Cal. Apr. 5, 2004), modified on reconsideration, No.

03-01180(SBA), 2005 WL 1048699 (N.D. Cal. May 4, 2005) (plaintiffs, Sales Service

Representatives, who drove to customers, delivering and picking up uniforms,

restocking supplies, and receiving orders, and facilitating supply sales, were "more

akin to customer service than it is to a warehouse trucker, railroad employee or

seamen" and thus, were not transportation workers); *see also, Fraga v. Premium*

*Retail Servs., Inc.*, No. CV 21-10751-WGY, 2023 WL 8435180, at *5 (D. Mass. Dec. 5,

2023) (citing *Saxon,* 596 U.S. at 456) (merchandisers who sorted, loaded, and

transported point-of-purchase materials to retailers were not transportation workers

because they received materials not more than once or twice a week, on average, and

the time to organize the materials received rarely exceeded one hour). The airplane

cargo loaders in *Saxon* constituted "a class of workers engaged in foreign or interstate

commerce" because they "physically load and unload cargo on and off planes traveling

in interstate commerce" and thus, were "actively engaged in transportation of [] goods

across borders via the channels of foreign or interstate commerce."). *Saxon,* 596 U.S. at 457-58.

Here, Plaintiffs are not "seamen" or "railroad employees" and do not belong to "any other class of workers engaged in foreign or interstate commerce;" nor do they belong to a class of workers for which a specific dispute resolution exists. 9 U.S.C. § 1. Plaintiffs belong to a class of CSAs responsible for providing customer service to Frontier customers, primarily facilitating the check-in and boarding processes; they are not "directly," "necessarily," or "actively" engaged in "transporting goods across state or international borders." *See* ECF #21 at ¶¶ 1, 32, 35, 38; ECF #27 at p. 3-6; ECF #27-1 at Ex. F. Unlike the plaintiff in *Saxon*, Plaintiffs' handling of customer baggage is extremely rare and only incidental to the performance of customer service. *See* ECF #27 at p. 14-15 ("Any direct contact with customer bags was exceptionally infrequent, involving less than 1% of all bags that pass through the check-in and ticketing counters . . . ").

>  **B.    The Court Should Dismiss, Administratively Close, Or Stay This Action Pending Arbitration.**

The Court should enter an Order compelling Plaintiffs to submit their claims to arbitration and dismiss this action. *See Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.,* 178 F. Supp. 3d 1121, 1129 (D. Colo. Apr. 13, 2016) ("The majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable."); *Werts v. Cabot Lodge Sec., LLC,* No. 23-CV-01374-GPG-SKC, 2023 WL 8272014, at *2 (D. Colo. Nov. 22, 2023) (compelling arbitration and dismissing

litigation); *Crawford v. United Servs. Auto. Ass'n Ins.*, No. 06-CV-00380-EWN-BNB, 2006 WL 8460352, at \*13 (D. Colo. July 10, 2006) (granting defendant's motion to dismiss and compel arbitration, reasoning "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration") (internal citation and quotation omitted). In the alternative, if the Court decides not to dismiss this action in its entirety, this action should be administratively closed or stayed pending full resolution of the arbitration to preserve the resources of this Court and the litigants. *See* 9 U.S.C. §§ 3, 4; *Bethany Nursing & Rehab Ctr., LLC v. Amaro,* No. 1:22-CV-03138-RM-SBP, 2024 WL 1286257, at \*9 (D. Colo. Mar. 11, 2024), report and recommendation adopted, No. 22-CV-03138-RM-SBP, 2024 WL 1282347 (D. Colo. Mar. 26, 2024) ("[i]t is standard practice in this district for courts to administratively close, rather than stay, cases pending resolution of the parties' claims in arbitration.").

## III.    CONCLUSION

For all these reasons, this Court should compel Plaintiffs' claims to arbitration on an individual basis, dismissing, staying, or administratively closing this action.

Respectfully submitted this 3rd day of September, 2024.

> *s/ Jennifer S. Harpole*
> Jennifer S. Harpole
> Carolyn B. Theis
> Littler Mendelson, P.C.
> 1900 Sixteenth Street, Suite 800
> Denver, CO 80202
> Telephone: 303.629.6200
> Facsimile: 303.629.0200

Email: jharpole@littler.com
catheis@littler.com

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2024, I filed the foregoing

**DEFENDANT FRONTIER AIRLINES INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS, ADMINISTRATIVELY CLOSE, OR STAY THIS ACTION** using the Court's CM/ECF filing system which will serve the following parties:

Shelby Woods, #48606
Abby Zinman, #57792
HKM Employment Attorneys LLP
518 17th Street, Suite 1100
Denver, CO 80202
Phone No.: 720.235.0105
Email: swoods@hkm.com
        azinman@hkm.com

*Attorneys for Plaintiffs*


Michael F. Ryan
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Phone: (713) 276-5500
Facsimile: (713) 276-5555
Email: mryan@foley.com

*Attorney for Defendants SGS and ASI*

16

*s/ Elisabeth L. Egan*
Elisabeth L. Egan

4885-2921-3918.8 / 057446-1095

17