IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-01672-SKC-KAS

CHIQUITA JOYNER, *et al.*, *on behalf of themselves
and all others similarly situated*,

      Plaintiffs,

v.

FRONTIER AIRLINES, INC., et al,

      Defendants.

---

**DEFENDANT FRONTIER AIRLINES INC.'S REPLY IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION [ECF #33]**

---

The Court should compel Plaintiffs' claims to arbitration because they have not met their burden to show they are transportation workers exempt from the Federal Arbitration Act ("FAA"). Plaintiffs' purported evidence should be disregarded as lacking foundation, but if the Court believes additional evidence is necessary, it should order a limited evidentiary hearing. Additionally, even if the FAA exemption applies, Plaintiff's' Colorado Minimum Wage Act ("CMWA") claims must be compelled to individual arbitration.

**I.    ARGUMENT**

    **A.    Plaintiffs Provide Services Removed From The Actual Transportation Of Goods And Are Not Sufficiently Engaged In Interstate Commerce For Purposes Of § 1.**

Plaintiffs have not cited any authority supporting the proposition that ticketing and gate Customer Service Agents ("CSAs") at Denver International Airport

("DIA")—the class of workers to which Plaintiffs belong—are engaged in interstate commerce such that they fall within the transportation worker exemption for purposes of § 1. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91, (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration"). Further, even if Plaintiffs were a "cog in the machine moving cargo out-of-state" or part of "a [d]irect [l]ink in the [t]ransportation of [c]argo [a]cross [i]nterstate [b]orders" as they allege, that is not enough to qualify them as transportation workers. *See* ECF #51 at p. 5, 6; *Schuler v. B & L Sys., LLC,* No. 1:24-CV-219, 2024 WL 4035986, at *3 (W.D. Mich. Sept. 4, 2024) ("An employee does not qualify as a transportation worker for § 1 purposes if they provide a service that is removed from the actual transportation of goods, even if the services are provided to a company that transports goods in interstate commerce." . . . The worker must "be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce.'"), citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 462-63 (2022) and quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001).

To determine whether a worker qualifies as a transportation worker for § 1 purposes, "The Court must ask whether the worker 'actually engaged in the movement of goods in interstate commerce in the same way seamen and railroad workers do." *Schuler,* 2024 WL 4035986, at *2 (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995)). "The Supreme Court determined 'seamen' 'includes only those who work on board a vessel,' but for § 1 purposes, 'transportation

2

worker' includes those who physically load and unload the vessel that carries goods across borders even if they are not on the vessel itself" because "**physically moving the goods on and off the vessel constitutes transporting goods and is a shared characteristic to the work seamen and railroad workers perform.**" *Schuler,* 2024 WL 4035986, at *2, citing *Saxon*, 596 U.S. at 461-62 (emphasis added).

Thus, regardless of an employee's ultimate impact on interstate commerce, courts have consistently found that "**workers not involved with the actual, physical movement of goods through interstate commerce do not fall under the residuary exemption**." *See Kowalewski v. Samandarov,* 590 F. Supp. 2d 477, 485 (S.D.N.Y. 2008) (emphasis added) (citing cases). For example, in *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437*, the court held that warehouse workers "engaged in the production of goods for subsequent sale in interstate commerce" are not transportation workers because "while their activities will undoubtedly affect interstate commerce they are not acting directly in the channels of commerce itself." 207 F.2d 450, 453 (3d Cir. 1953). Similarly, in *London, et al. v. A-1 Quality Logistical Solutions, LLC, et al.,* the court concluded that order selectors who moved, located, stacked, and counted merchandise within the defendant's warehouse until a different worker placed them on trucks bound for interstate travel were not transportation workers for purposes of § 1, reasoning, "To rule otherwise would suggest that any worker that touches goods in the stream of interstate commerce is a transportation worker. This result would

3

overextend the shield of § 1's residual clause." No. 1:23-CV-107, 2024 WL 4266359, at *3 (S.D. Ohio Sept. 23, 2024).

Similarly, in *Perez v. Globe Airport Sec. Servs.* and *Cole v. Burns Int'l Sec. Servs.,* the court held pre-departure security guards at airports and train stations, respectively, did not qualify as transportation workers because they "[were] not engaged in the transportation of goods in commerce; [they] merely **inspected or guarded such goods prior to their transport**." 253 F.3d 1280, 1284 (11th Cir. 2001) (vacated due to parties' stipulation of dismiss) (emphasis added); 105 F.3d 1465, 1471–72 (D.C. Cir. 1997). While such roles are "certainly important to ensure safety in the 'free flow of goods across borders,' such work is '**only perceptibly connected to instrumentalities of interstate commerce**.'" *Carr, et al. v. Traffic Management, Inc.,* No. 2:24-CV-01333 HDV JCX, 2024 WL 4329070, at *3 (C.D. Cal. Aug. 13, 2024) (emphasis added) (distinguishing plaintiff, a traffic controller responsible for "placing, maintaining, and removing traffic control operations" who "played no role in loading or unloading goods or passengers into vehicles that may be bound for an out-of-state destination" and "d[id] not have a direct role in the supply chain or in the movement of goods across state lines" from cargo loaders in *Saxon*) (quoting *Saxon,* 596 U.S. at 458, 462).

Likewise, courts have held that logistics account executives employed by a freight brokerage and supply chain management company who performed logistical and administrative tasks such as gathering load information, inputting data into a database, coordinating with carriers, negotiating price, and overseeing the

4

transportation process through "check calls" to confirm on-time delivery are not transportation workers because their job duties are "too attenuated to support the conclusion that . . . [they] are 'actively engaged in transportation of . . . goods across border via the channels of foreign or interstate commerce." *Pasche, et al. v. Total Quality Logistics, LLC,* No. 8:23-CV-01812-MSS-JSS, 2024 WL 4234937, at *3 (M.D. Fla. Sept. 19, 2024) ("Logistical support in the movement of goods that flow through interstate commerce" does not "fall within the transportation worker exemption."); *see also, Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351-52 (8th Cir. 2005) (customer service representative employed by a transportation company "serving primarily as a carrier of general commodities by truck who "never directly transported goods in interstate commerce" and whose central job duties "only tangentially related to movement of goods" in that he did have "a duty to coordinate freight flow" was not a transportation worker).

In contrast, an airport ramp supervisor who "frequently loads and unloads cargo" from airplanes traveling interstate is a transportation worker because the supervisor was "intimately involved with the commerce (*e.g.*, transportation) of that cargo." *Saxon*, 596 U.S. at 458, 142 S.Ct. 1783. Similarly, plane fuelers are "directly involved in the transportation itself, not only the maintenance of the means by which the goods were transported" in that "fueling cargo planes that carry goods in interstate commerce is 'so closely related to interstate transportation as to be practically a part of it.'" *Lopez v. Aircraft Serv. Int'l, Inc.,* No. CV 21-7108-DMG (EX), 2022 WL 18232726, at *3 (C.D. Cal. Dec. 9, 2022) (emphasizing fueling a plan is

5

"closer both physically and temporally to the actual movement of goods between states than a truck mechanic who works on trucks that move goods in interstate commerce"), aff'd, 107 F.4th 1096 (9th Cir. 2024) (quoting *Saxon,* 142 S.Ct. at 1789); *see also*, *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *4 (N.D. Cal. Apr. 5, 2004) ("What defines a seaman, then, is his connection to the vessel itself. The vessel, in turn, represents the heart of the commercial activity—whether it is fishing, whaling, or transporting goods—a vessel is essential to the commercial activity. . . ."), citing *McDermott Int'l., Inc. v. Wilander,* 498 U.S. 337, 346 (1991; *see also, Coats v. TTX Co.*, No. EDCV 23-2405-MWF-SPX, 2024 WL 1118997, at *3 (C.D. Cal. Feb. 27, 2024) ("[p]roduction mechanics who maintain, repair, and clean trains" for an employer that provides railcars and freight management services to railroad companies do not qualify as transportation workers because they are not "directly involved in the actual transit of goods.").

Plaintiffs, who assist customers with printing boarding passes and bag tags, check customer identification, and provide verbal instruction regarding the check-in and boarding process, are more like the warehouse workers and order selectors who prepare goods for sale in interstate commerce, the guards at airports and train stations who inspect or guard goods prior to their transport, the customer service representatives who coordinate freight flow, and the logistics account executives who oversee the transportation process than the ramp supervisor who frequently loads cargo onto planes or the airplane fuel technician. *See* Appx. at p. 2 -3 at (Ex. A)(Decl. of Travis Romero), ¶¶ 7, 15. Plaintiffs "serve an important **support role** in the

6

transportation industry, but [] are not themselves transportation workers." *Lorntzen v. Swift Transp., Inc.,* 316 F. Supp. 2d 1093, 1097 (D. Kan. 2004) (emphasis added). They do not share characteristics to the work seamen and railroad workers perform; they do not travel interstate as part of their jobs, work onboard planes, load or unload cargo from planes, or fuel planes, and are not otherwise directly involved in the actual, physical movement of goods through interstate commerce. While Plaintiffs may, on occasion, physically assist a customer with baggage—placing it on a scale or conveyor belt—they are not responsible for doing so, and merely handling baggage in such a manner is not the same as moving it in interstate commerce. *See* ECF #27 at p. 6. **Section 1 is not intended to cover any worker that simply touches goods in the stream of interstate commerce**. *See London, et al.,* 2024 WL 4266359, at *2 (emphasis added); *Circuit City Stores*, 532 U.S. at 118–19 (term "transportation worker" must be construed narrowly for purposes of §1). Regardless, the instances of Plaintiffs handling baggage are infrequent, and Plaintiffs are specifically instructed not to do so.[1] *See* ECF #27-1 at p. 15, ¶¶ 7, 8; Appx. at p. 2 (Ex. A) (Decl. of Travis Romero), ¶¶ 9, 10; Appx. at p. 6 (Ex. C) (Oct. 10, 2024 Video Footage – Bag Drop); Appx. at p. 7 (Ex. D) (Oct. 10, 2024 Video Footage – Agent Assist).

### B. The Court Should Disregard Plaintiffs' Evidence Or Order An Evidentiary Hearing.

---

[1] Workers should not be permitted to qualify themselves as transportation workers by disobeying their employers or not abiding by their employers' policies and procedures.

The videos Plaintiffs submitted do not show the work Plaintiffs purport to perform. While the videos depict baggage, they do not depict Plaintiffs frequently handling it, if at all. Further, Plaintiffs failed to lay sufficient foundation to establish the videos are representative of the work they typically perform. The videos are referenced as having been made in "January 2023."[2] *See* ECF #51-1 at p. 1, 9-11 (Exs. B-1–B-3). But January 2023 was wrought with a number of very atypical days at DIA and Frontier's operations. For example, on January 11, 2023, DIA was impacted by a Federal Aviation Administration (FAA) system outage during which conveyor belts and baggage carousels stopped functioning and flights were cancelled and/or delayed. *See* Appx. at p. 3 (Ex. A) (Decl. of Travis Romero) at ¶13. In addition, the outage canceled and delayed hundreds of flights in January 2023 and was subsequently ranked as one of the worst airports for flight disruptions that month. *See* "Denver Airport Cancels Or Delays Hundreds Of Flights: Reports," The New York Post, available at https://nypost.com/2023/01/03/denver-international-airport-cancels-or-delays-hundreds-of-flights/ (Jan. 3, 2023) (last visited Oct. 11, 2024); "DIA Ranked Worst Airport For Flight Disruptions In January," FOX31 Denver (kdvr.com), available at https://kdvr.com/news/local/dia-ranked-worst-airport-for-flight-disruptions-in-january/ (Feb. 24, 2023) (last visited Oct. 11, 2024). When conveyor belts and baggage carousels are down and/or baggage is not being loaded onto

---

[2] Undersigned counsel for Frontier asked Plaintiffs' counsel to provide the date Plaintiffs' video recordings were made and/or provide the metadata but did not receive a response. *See* Appx. at p. 5 (Ex. B) (Email dated Oct. 7, 2024 from C. Theis to S. Woods, et al.).

8

aircrafts due to flight cancellations and delays, CSAs may handle baggage more frequently than is typical to make room for travelers and airport personnel passing through. *See* Appx. at p. 2 - 3 (Ex. A), (Decl. of Travis Romero), ¶12.

If uncertainty remains regarding the evidence submitted relevant to the transportation worker issue, Frontier respectfully requests that the Court order a limited evidentiary hearing. *See Fraga v. Premium Retail Servs., Inc.,* 704 F. Supp. 3d 289, 293 (D. Mass. 2023) (ruling after two-day evidentiary hearing to determine whether the plaintiff and proposed class members worked in interstate commerce for purposes of § 1 exemption).

### C. Plaintiffs Concede The FAA Preempts The CUAA.

Plaintiffs do not dispute that the FAA preempts the Colorado Uniform Arbitration Act ("CUAA"). *See* ECF #51 at p. 1 (arguing only that "[w]hen the FAA does not apply, the FAA cannot preempt the state law that governs . . ."). Thus, if the Court determines that Plaintiffs are not transportation workers, Plaintiffs must be compelled to individual arbitrations pursuant to the FAA; no preemption analysis need be performed.

### D. Plaintiffs' Fourth And Fifth Claims For Relief Are Not Brought Under The CWA And Thus, Should Be Compelled To Arbitration.

To the extent the Court determines Plaintiffs are transportation workers and thus, the FAA does not apply, at least some of Plaintiffs' claims must still be compelled to arbitration pursuant to the CUAA, which does not include a transportation worker exemption. *See* Colo. Rev. Stat. § 13-22-206(1). *Lambdin* concerns only the CWCA; "[its holding] does not extend past Colo. Rev. Stat. §§ 8-4-

9

101 through -126, as the opinion itself cautioned." *Cross, et al. v. Amazon.com, Inc., et al.,* No. 23-CV-02099-NYW-SBP, 2024 WL 4346414, at *10 (D. Colo. Sept. 30, 2024), citing *Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe,* 903 P.2d 1126, 1130, n. 10 (Colo. 1995) ("Our holding in this case is limited to the validity of an arbitration clause to the extent it restricts an employee's right to bring a civil suit to recover wages pursuant to the Colorado Wage Claim Act, §§ 8–4–101 to –126") (internal citation omitted). Plaintiffs have not identified any comparable authority addressing the CMWA. Thus, Plaintiffs' Fourth Claim for Relief (Failure to Pay Wages in Violation of the Minimum Wages of Workers Act, C.R.S. §§ 8-6-101 *et seq*.) and Fifth Claim for Relief (Failure to Provide Meal and Rest Periods in Violation of the Minimum Wages of Workers Act, C.R.S. §§ 8-6-101 *et seq*.) must be compelled to individual arbitrations. *See Cross,* 2024 WL 4346414, at *10 (compelling claims alleging violation of Colorado overtime and minimum wage claims to arbitration and staying class claims).

## II. CONCLUSION

For the foregoing reasons, Frontier respectfully requests that this Court compel Plaintiffs' claims in their entirety to arbitration on an individual basis, dismissing, staying, or administratively closing this action. In the alternative, should the Court conclude Plaintiffs are transportation workers, the Court should compel Plaintiffs' Fourth and Fifth Claims for Relief to arbitration on an individual basis, dismissing, staying, or administratively closing this action with respect to the remaining class claims.

Respectfully submitted this 15th day of October, 2024.

*s/ Carolyn B. Theis*
Jennifer S. Harpole
Carolyn B. Theis
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: jharpole@littler.com
         catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2024, I filed the foregoing **DEFENDANT FRONTIER AIRLINES INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION [ECF #33]** using the Court's CM/ECF filing system which will serve the following parties:

Shelby Woods, #48606
Abby Zinman, #57792
HKM Employment Attorneys LLP
518 17th Street, Suite 1100
Denver, CO 80202
Phone No.: 720.235.0105
Email: swoods@hkm.com
azinman@hkm.com

*Attorneys for Plaintiffs*

Michael F. Ryan
Foley & Lardner LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel: (720) 437-2000
Fax: (720) 437-2200
Email: mryan@foley.com

Christopher Ward
Foley & Lardner LLP
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Phone: (312) 832-4500
Facsimile: (312) 832-4700
Email: cward@foley.com

*Attorney for Defendants SGS and ASI*

*s/ Joanna Fox*
Joanna Fox, Legal Assistant

12